IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.        ) | Civil Action No. 3:05cv49-A |
| ) | |
| EDDISON SMITH, SR.; MARY ANN ) | |
| JOHNSON; CHERYL JOHNSON, ) | |
| individually; and CHERYL JOHNSON, as ) | |
| next friend of Samuel Johnson, a minor, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment(Doc. #31) filed by the Plaintiff, Allstate Insurance Company ("Allstate") and a Motion for Default Judgment (Doc. #30) also filed by Allstate.

Allstate filed a Complaint for Declaratory Judgment in this court on January 1, 2005. Allstate seeks a declaratory judgment that there is no coverage of Defendant Eddison Smith ("Smith"), its insured, in an underlying state court suit, and that it has no duty to indemnify or defend Smith.

Smith was served with an alias summons. (Doc. #8). Smith, however, has not filed an Answer or responsive pleading to the Complaint. The Clerk of the Court entered default against Smith on April 8, 2005.

This court denied a previously filed Motion to Dismiss, finding based on the record evidence that Smith had made a claim against his insurance company for coverage, and that it was appropriate to exercise jurisdiction in this case. (Doc. # 23).

Allstate has now moved for summary judgment on the basis that a policy exclusion applies, and that Smith is not entitled to coverage in the suit in state court. Allstate also has moved for a default judgment against Smith.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movants:

As stated above, Defendant Smith is an Allstate policy holder.  Smith retired from the Veterans Administration in 1998.  While he was employed with the Veterans Administration, and after he retired, he engaged in part-time work doing repair on buildings.  Smith had a hip replaced in June of 1998 and the other replaced in June of 2000.

Mary Ann Johnson and Cheryl Johnson, on her own behalf and on behalf of Samuel Johnson ("the Johnsons"), have sued Smith in state court for injuries sustained in a rental house fire.  That case is still pending. The Johnsons rented the house from the Strains, who are also defendants in the state court suit.

In November 2000, Smith installed three new smoke detectors in the house owned by the Strains and rented to the Johnsons.  The Johnsons have brought claims in state court alleging that

Smith negligently or wantonly failed to install a smoke detector, or failed to install a working smoke detector, in the house rented to the Johnsons.

    Allstate contends the following policy exclusion applies in this case:

> 12.  We do not cover any **bodily injury** or **property damage** arising out of the past or present **business activities** of an insured person.
> \* \* \* \*
> 6. "Business"– means:
> a) any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes.  The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

    The Strains paid $100 for installation of the smoke detectors.  Smith paid for the smoke detectors with that money. Smith was separately paid at an earlier date for other work he did on the house.

    The Johnsons have presented evidence, in the form of Smith's deposition testimony, that he installed the smoke detectors as a favor to the Strains.

## IV. DISCUSSION

    Allstate has moved for summary judgment on the grounds that the injuries suffered by the Johnsons were caused by Smith's business activities, and so are excluded from coverage under the Allstate policy issued to Smith.

    If the terms within an insurance contract are plain and unambiguous, "the construction of the contract and its legal effect become questions of law for the court." Nationwide Ins. Co. v. Rhodes, 870 So.2d 695, 697 (Ala. 2003) (citation omitted).  Exceptions to coverage in a policy of insurance must be interpreted as narrowly as possible in order to provide maximum coverage

4

of the insured.  Hall v. State Farm Mut. Auto. Ins. Co. , 514 So.2d 853, 856 -857 (Ala. 1987).  The issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide.  McDonald v. U.S. Die Casting & Dev. Co., 585 So.2d 853, 855 (Ala. 1991).

      Allstate provides evidence that Smith has a part-time business, Smith Construction.  Mendy Strain, an owner of the rental house in question, has testified in a deposition that Smith performed most of the maintenance work for her and her husband.  Mendy Strain Dep. at page 23: 19-20.  Smith was paid $100 for the installation of the three smoke detectors in question.  Smith Dep. at page 51: 18-22. Allstate contends, therefore, that Smith installed the smoke detectors as part of a business activity, and the exclusion from coverage for injuries arising from business activities applies.

      Although Alabama apparently has not interpreted a "business activities" exclusion in an insurance policy, the Alabama Supreme Court has adopted the following definition of "business" within the context of a "business pursuits" exclusion:  "anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood." Vallas v. Cincinnati Ins. Co., 624 So. 2d 568, 571 (Ala. 1993).

      The Alabama Supreme Court has noted in two cases that policies with "business pursuits" exclusions are poorly worded, but has concluded that such policy exclusions are unambiguous in the context of the cases before the court.  See Vallas, 624 So. 2d 671. In Vallas, the court stated that although the term "business" could have been defined more clearly, the record clearly showed that the insured had been in a partnership that engaged in transactions for profit for 15 years. Id. at 571-72.  Similarly, in Stanley v. Am. Fire and Cas. Co., 361 So. 2d 1030, 1033 (Ala. 1978), the court determined that although a business pursuits exclusion, and its

exception, were poorly worded, under the facts of the case which included an insured supervising children on a regular basis for compensation, coverage was unambiguously excluded.

The Johnsons have responded to the Motion for Summary Judgment filed by Allstate by arguing that there is evidence to support a finding that Smith was not engaged in a business activity when he installed the smoke detectors and, therefore, this court cannot conclude as a matter of law that the exclusion unambiguously applies. The Johnsons state that Smith was retired and installed the smoke detectors after having two hips replaced. Mendy Strain gave Smith a check for $100.00 and Smith bought the three detectors which ranged in price from $12.00 to $23.00. Smith Dep. at page 35: 7-11. The Strains and Smith have known each other since 1957. Id. at page 58: 1-5. Smith and Willie Strain meet to talk about football and get together with a group for breakfast. Id. at page 60: 2-16, 63: 21–64:1-10. The Johnsons have also provided evidence from Smith's deposition that he installed the smoke detectors as a favor. Id. at page 60: 11-17. Specifically, Smith testified that Willie Strain "needed the work done to get his program together, and I just kind of as a favor did it." Id. at page 60: 14-17. The Johnsons argue that the mere fact that Smith received some payment in addition to the cost of the smoke detectors does not necessarily mean that the activity was engaged in for economic gain, and that the evidence that Smith was retired, knew the Strains socially, was physically limited at the time, and testified that he installed the smoke detectors as a favor create a question of fact as to whether he engaged in the activity for the purpose of receiving a profit or economic gain.

There is support for the Johnsons' argument in case law outside of Alabama. For instance, in Cunningham v. Middle Ga. Mut. Ins. Co., 601 S.E.2d 382 (Ga. Ct. App. 2004), a

supervisor for a roofing company undertook to perform roofing work as a favor for his former pastor. He was to be compensated in an amount that would have meant a small profit. In the course of the roofing work, he was alleged to have caused a fire to the dwelling. The insurance policy excluded coverage for property damage arising out of business pursuits. The court concluded that because the work was not part of the insured's customary activity, and he was performing the work as a favor, even though he might have gotten a financial gain, the exclusion did not apply. Id. at 184.

In another Georgia state case analyzing a "business pursuits" exclusion, the court determined there was a question of fact precluding summary judgment where there was some evidence that a babysitting service was treated as a business, but there was also evidence that the insured "offered her services as both a favor and a convenience to parents who lived in the neighborhood." United Serv. Auto. Assoc. v. Lucas, 408 S.E.2d 171, 173 (Ga. Ct. App. 1991).

Similarly, in Stuart v. Am. States Ins. Co., 953 P.2d 462, 467 (Wash. 1998), summary judgment on the basis of a "business pursuits" exclusion was reversed where there was record evidence that the insureds' motivation for being foster parents was to enrich the lives of foster children, not to make a profit. The court reasoned that compensation "may be used as a method of establishing profit motive but it does not establish, per se, a profit motive exists." Id. at 466.

Although these cases do not apply Alabama law, and the applicable exclusion is different from the exclusion in this case, the court finds persuasive the treatment of the definition of

7

"business," and finds this interpretation of "business" to be consistent with the definition adopted by the Alabama Supreme Court.[1]

In this case, as stated above, Allstate has presented evidence which it argues tends to show that Smith had a profit motive when he installed the smoke detectors for the Strains. The Johnsons, on the other hand, have presented evidence which they argue tends to show that Smith was not motivated by economic gain, but was instead performing a favor. Although given an opportunity by Order of this court to file a reply in support of its Motion for Summary Judgment, Allstate has not responded to the arguments by the Johnsons.

The "business activities" exclusion at issue in this case lends itself to the reasonable reading that only injuries arising from an activity from which the insured intended to derive a gain or profit, are excluded. There is a question as to whether Smith was engaged in an activity with a profit motive. Therefore, unlike the insurers in <u>Vallas</u> and <u>Stanley</u>, Allstate has failed to establish that the "business activities" exclusion unambiguously applies. Summary judgment is, therefore, due to be DENIED.

With regard to Allstate's Motion for Default Judgment, the Johnsons argue that default judgment ought not be entered in favor of Allstate against Smith because there would be a risk of inconsistent adjudications.

---

[1] Although in the <u>United Serv. Auto. Assoc.</u> decision the Georgia Court of Appeals distinguished Alabama precedent, it did so on the basis of its finding that babysitting is not per se a business where there is evidence that there was not a profit motive. <u>United Serv. Auto. Assoc.</u>, 408 S.E.2d at 173. Even assuming, without deciding, that Alabama had adopted a rule that babysitting is a business as a matter of law, such a rule is not dispositive in this case.

In Frow v. De la Vega, 82 U.S. 552 (1872), the Court held that where there are multiple defendants who are jointly liable, default should not be entered as to one defendant prior to the decision on the merits as to the remaining defendants.

The Eleventh Circuit applied Frow in Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc., 740 F.2d 1499 (11th Cir. 1984). In Gulf Coast Fans, the plaintiff sued two different defendants and the cases were consolidated for trial. Default judgment was entered against one of the defendants. The trial was held against the other defendant and judgment was entered in favor of that defendant. The Eleventh Circuit vacated the default judgment. Id. at 1513. The court reasoned that if the two defendants had been sued under a theory that they were jointly liable and one had defaulted, but the other had prevailed at trial, under Frow, the plaintiff could not obtain a default judgment. Id. at 1512. The court went on to state that even when defendants are not to be held jointly liable, but are similarly situated, judgment should not be entered against a defaulting defendant if the other prevails on the merits. Id.[2]

Other courts have applied this reasoning in the context of suits for declaratory judgment. In Hawkeye-Security, Ins. Co. v. Schulte, 302 F.2d 174 (7th Cir.1962), the Seventh Circuit determined that where an insurer brought a declaratory judgment action against its insureds and an injured party and the insureds defaulted, the allegations of the complaint were not to be taken as true as against the non-defaulting defendant, and the non-defaulting defendant could "assert

---

[2] This case is to be distinguished from Eleventh Circuit precedent interpreting Frow when a surety is involved. The Eleventh Circuit has stated that Frow is limited to the situation in which there is a risk of inconsistent adjudications, and has concluded that where a surety is conclusively bound by a default judgment entered against its principal, there is no risk of inconsistent adjudications, and default against the principal also binds the surety. Drill South, Inc. v. Intern'l Fid. Ins. Co., 234 F.3d 1232, 1237 & n.8 (11th Cir. 2000).

any proper defense raised by his answer to the complaint." Id. at 177; see also American Standard Ins. Co. of Wisconsin v. Rogers 123 F. Supp. 2d 461, 466 (S.D. Ind. 2000) ("In a declaratory judgment case of this kind, we would normally take the plaintiff-insurer's motion to enter a default judgment against the defendant insured under advisement and allow the co-defendant-injured party to defend the action against the insurer on the merits.").

In this case, although the Johnsons are not defendants who will be held jointly liable with Smith, it appears to the court that their situation falls within the reasoning of Gulf Coast Fans because a default judgment on the coverage issue as to Smith creates a risk of inconsistent judgments. Accordingly, the court declines to enter default judgment at this time. The Motion for Default Judgment will be held in abeyance until the Johnsons have had an opportunity to litigate fully the coverage dispute.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motion for Summary Judgment (Doc. # 31) is DENIED.

2.  The Motion for Default Judgment (Doc. #30) is held in abeyance until such time as Mary Ann Johnson and Cheryl Johnson have litigated to conclusion the coverage issue presented by the Complaint for Declaratory Judgment in this case.

Done this 28th day of October, 2005.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE